IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FINAL MILE HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | NO. _____ |
| ) | |
| DSP CAPITAL FUNDING, LLC and ) | |
| KEVIN MEYER, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

COMES NOW, Plaintiff FINAL MILE HOLDINGS, LLC, by and through its undersigned counsel, and files this Complaint against Defendants DSP CAPITAL FUNDING, LLC and KEVIN MEYER (collectively, "Defendants"), respectfully showing this Honorable Court the following:

**Jurisdiction & Venue**

1.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

2.

Plaintiff FINAL MILE HOLDINGS, LLC ("Plaintiff") is a Georgia limited liability company with its principal office located at 1000 Peachtree Industrial Boulevard, Suite 6-138, Suwanee, Georgia 30024.

3.

Defendant DSP CAPITAL FUNDING, LLC ("DSP Capital") is a Florida limited liability company with its principal office located at 3003 S. Congress Avenue, Palm Springs, Florida 33461. DSP Capital may be served through its registered agent, K&L Meyer Congress, LLC, at its registered address, which is the same as its principal office address.

4.

Defendant KEVIN MEYER ("Meyer") is an individual domiciled in Florida. Meyer may be served at his residence located at 9396 Grand Prix Lane, Boynton Beach, Florida 33472.

5.

As provided herein, this Court has personal jurisdiction over Defendants. The allegations, *inter alia*, show Defendants have such minimum contacts with this forum so as not to offend traditional notions of fair play and substantial justice.

6.

Venue is proper against Defendants in this Court pursuant to the Asset Purchase Agreement described herein.

**Statement of Facts**

7.

Amazon Logistics, Inc. ("Amazon") outsources to third parties the courier and shipping logistics of transporting packages from Amazon warehouses to their final destinations. Because of Amazon's domestic scope and scale and its global presence, there is a competitive market to provide courier services and shipping logistics to Amazon. One of the principals of Plaintiff, Usman Eshai ("Eshai"), operated several companies which previously competed in the Amazon courier market.

8.

Eshai operated a fleet of vehicles out of the Amazon warehouses. He had his own employment base, which included drivers, managers, and dispatchers. His operations started with the fleet of vehicles at the Amazon warehouse, and Amazon loaded the vehicles with packages for Eshai to transport to their final destinations. Then, Eshai's drivers would follow the provided route to deliver each package. Through his entities, Eshai developed a professional business relationship with Amazon.

9.

Defendants also operate in the Amazon courier industry. Meyer operated two companies, Allpoints Trucking and Courier Service, Inc. d/b/a Thruway Direct ("Thruway Direct") and Final Mile, LLC ("Final Mile"), as the majority owner of each. Amazon was Thruway Direct and Final Mile's primary client.

10.

Thruway Direct's relationship with Amazon is governed by the Work Order, dated as of January 10, 2016 and as amended thereafter (the "Thruway Direct Work Order"), and Final Mile's relationship with Amazon is governed by the Work Order, as amended (the "Final Mile Work Order").

11.

Though competing in the same Amazon courier market, Eshai and Defendants had no relationship or interaction prior to 2019.

12.

In 2019, Meyer informed an Amazon broker that he desired to sell Thruway Direct and Final Mile, so the Amazon broker introduced Meyer to Eshai and informed Eshai of Meyer's intention to sell the entities.

13.

Eshai expressed an interest in purchasing the assets of Thruway Direct and Final Mile from Meyer and formed Plaintiff on March 25, 2019 for the purpose of acquiring their assets and continuing their operations.

14.

Thruway Direct, Final Mile, Meyer, and Plaintiff executed that certain Asset Purchase Agreement (the "APA"), dated March 29, 2019, whereby Plaintiff purchased and assumed from Thruway Direct and Final Mile (collectively, "Sellers") "the rights and obligations of Sellers to the Purchased Assets and the Assumed Liability (as defined herein) necessary for the operation of their Amazon delivery provider business…." A true and correct copy of the APA is attached hereto and incorporated herein as Exhibit "A".

15.

The APA provides that:

> Sellers shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Sellers, all of Sellers' respective right, title and interest in the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired, as set forth on Section 1.01 of the disclosure schedules ("Disclosure Schedules") attached hereto (the "Purchased Assets"), free and clear of any charge, claim, community property interest, pledge, condition, equitable interest, lien (statutory or other), option, security interest , mortgage, easement, encroachment, right of way,

right of first refusal, restriction of any kind, including any restriction on use, voting, transfer, **_receipt of income or exercise of any other attribute of ownership_**, or other encumbrance ("Encumbrance"), with the sole exception of Assumed Liabilities, as applicable.

APA, Section 1.01 (emphasis added).

16.

The Disclosure Schedules specifically identify the purchase of intellectual property, which includes "[a]ll rights, title, and interest into the names and trade names, including any and all derivations thereof (including all associated goodwill with the foregoing): Final Mile LLC, Creative Delivery Systems, Allpoints Trucking and Courier Service, Inc., and Thruway Direct." Id., Schedule Disclosures, Section 3.05(b).

17.

In exchange for the Purchased Assets, Plaintiff paid Sellers $3,200,000.00 and assumed the Assumed Liabilities. See id., Section 1.03.

18.

At the closing of the purchase and sale, Sellers delivered to Plaintiff "an assignment and assumption agreement in the form and substance satisfactory to Buyer (the "Assignment and Assumption Agreement") and duly executed by Sellers, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities." Id., Section 2.02(a)(ii).

19.

The assigned contracts included (1) the Thruway Direct Work Order and (2) the Final Mile Work Order (collectively, the "Work Orders"). See id., Schedule Disclosures, Section 3.06.

20.

Meyer became an agent of Plaintiff "in the capacity of 'client account manager' for a period of not less than the earlier to occur of 12 months following the Closing Date and Buyer terminates Meyer's employment." Id., Section 5.02.

21.

As "client account manager", Meyer was required to provide Plaintiff "consulting and client management services in connection with the maintenance of the Assigned Contracts, which may include, without limitation, meeting with and acting as the point of contact with the clients under the Assigned Contracts on behalf of Buyer (the "Services")." Id.

22.

In the event that a dispute arises out of the APA, Georgia law applies, and Sellers, Meyer, and Plaintiff have submitted to the Northern District of Georgia's jurisdiction. See id., Sections 7.10 and 7.11.

23.

After finalizing the APA, Plaintiff and Sellers executed a transition of the relationship with Amazon from Sellers to Plaintiff. Plaintiff maintained Sellers' established relationship with Amazon. Plaintiff performed under the Work Orders as if it stepped into the shoes of Thruway Direct and Final Mile respectively. Esteban de Leon ("de Leon") and Meyer acted as agents of Plaintiff by managing the ongoing operation of Thruway Direct and Final Mile. Meyer acted as the client account manager, working directly with Amazon to effectuate the APA. Plaintiff's employees and fleet of vehicles provided Amazon the courier services previously performed by Sellers. With de Leon and Meyer, Plaintiff performed the duties and obligations of Thruway Direct and Final Mile contained in the Work Orders, and Amazon compensated Plaintiff in accordance with the Work Orders.

24.

Amazon paid Thruway Direct and Final Mile invoices to the Amazon Payee Central Deposit Account ending in *****865 (the "Account"). DSP Capital maintained exclusive control of the Account and would disburse Plaintiff the invoice payments.

25.

At all times relevant, Meyer has been a principal and manager of DSP Capital.

26.

At all times relevant, Plaintiff conducts its business in Georgia, and for each Amazon invoice DSP Capital pays to Plaintiff, it is sending funds to Georgia.

27.

In August 2020, Plaintiff and Amazon decided to sever their relationship and terminate the Work Orders. On August 7, 2020, Amazon executed a separation agreement with Thruway Direct, which was owned by Plaintiff (the "Thruway Direct Separation Agreement") and a separation agreement with Final Mile, which was also owned by Plaintiff (the "Final Mile Separation Agreement")(collectively with the Thruway Direct Separation Agreement, the "Separation Agreements").

28.

Pursuant to the Thruway Direct Separation Agreement, Thruway Direct released any and all claims it has or may have against Amazon arising out of the Thruway Direct Work Order and agreed to perform the transition plan attached to the contract as Exhibit A to facilitate an orderly transition of the courier services to other delivery partners designated by Amazon. In exchange for the comprehensive release and performance of the transition plan, Amazon agreed to pay Thruway Direct, which was owned by Plaintiff,  $1,185,000.00 "via ACH or wire transfer ***to the same bank account into which Amazon currently pays fees*** pursuant to the

Program Agreement (the "Conditional Payment") on or before the later of (i) December 15, 2020 or (ii) 14 days after the date on which the Company demonstrates to Amazon's satisfaction that the Company has complied with the Payment Conditions …." Thruway Direct Separation Agreement, Section 4(a) (emphasis added).

29.

The Final Mile Separation Agreement mirrored the language contained in the Thruway Direct Separation Agreement, except that Amazon agreed to pay Final Mile $465,000.00 (the "Final Mile Payment") "via ACH or wire transfer ***to the same bank account into which Amazon currently pays fees*** pursuant to the Program Agreement on or before the later of (i) October 7, 2020 or (ii) 14 days after the date on which the Company demonstrates to Amazon's satisfaction that the Company has complied with the Payment Conditions …." Final Mile Separation Agreement, Section 4(a) (emphasis added).

30.

The parties to the Thruway Direct Separation Agreement represented that the Conditional Payment is solely offered to Thruway Direct as consideration for entering the Thruway Direct Separation Agreement and that it is valid consideration to which Thruway Direct is not already entitled prior to entering the contract. The

parties to the Final Mile Separation Agreement made the same representations with respect to the Final Mile Payment. Separation Agreements, Section 12(e) and (g).

31.

As a result of the APA, Plaintiff is entitled to the Conditional Payment and the Final Mile Payment.

32.

Plaintiff, as assignee of the Work Orders, is the only entity that has standing to assert and authority to release any and all claims against Amazon arising out the Work Orders.

33.

Further, through the APA, Plaintiff purchased the right to exercise all ownership rights and to receive income owed and due to Thruway Direct and Final Mile, including the Conditional Payment and the Final Mile Payment.

34.

Plaintiff timely and fully performed the transition plans detailed in the Separation Agreements.

35.

In October 2020, Amazon paid the Final Mile Payment of $465,000.00 owed to Plaintiff via wire transfer to the Account, controlled exclusively by DSP Capital.

On November 2, 2020, DSP Capital properly forwarded the Final Mile Payment to Plaintiff via wire transfer to an account controlled by Eshai, located in Georgia.

36.

On or about December 16, 2020, Amazon also paid the Conditional Payment of $1,185,000.00 owed to Plaintiff as owner of all assets of Thruway Direct via wire transfer to the Account; however, instead of forwarding the Conditional Payment to Plaintiff, DSP Capital wired the money to Meyer, who wrongfully converted Plaintiff's funds to his own use.

37.

Meyer breached the APA, by *inter alia*, exceeding his authority as "client account manager" and stealing the Conditional Payment. Meyer signed the Thruway Direct Separation Agreement as VP of Thruway Direct because, through the APA, he was authorized to "act as point of contact with clients on behalf of Buyer". APA, Section 5.02. However, Meyer was not and is not authorized, by Plaintiff or by the APA, to simply steal the Conditional Payment or to convert it to his own use.

38.

At all times relevant, Meyer owns a yacht through the entity Kefi Yacht Charters, LLC (the "Yacht"). After DSP Capital sent the Conditional Payment to Meyer, Meyer made substantial improvements to the Yacht. Upon information and

belief, Meyer used the Conditional Payment to fund the luxurious upgrades to the Yacht.

39.

On January 8, 2021, counsel for Plaintiff sent DSP Capital a spoliation notice and demand for insurance information. DSP Capital was unresponsive to both letters. True and correct copies of the spoliation notice and demand for insurance information are attached hereto and incorporated herein as Exhibit "B" and Exhibit "C", respectively.

40.

Then, on January 14, 2021, the undersigned counsel sent Defendants a letter demanding Defendants pay Plaintiff the Conditional Payment and advising that should Defendants fail to comply, Plaintiff will seek attorneys' fees incurred in filing this lawsuit, pursuant to O.C.G.A. §§ 13-1-11 and 13-6-11 ("Demand Letter"). A true and correct copy of the Demand Letter is attached hereto and incorporated herein as Exhibit "D".

41.

To date, Defendants have failed or refused to return the Conditional Payment to Plaintiff and have not responded to the repeated demands of counsel for Plaintiff.

## COUNT I
## CONVERSION
### *(against Defendants)*

42.

Plaintiff incorporates Paragraphs 1 through 41 above as if fully restated herein.

43.

The Conditional Payment in the amount of $1,185,000.00 belongs to Plaintiff.

44.

Defendants caused Plaintiff's Conditional Payment to be illegally converted to their own use.

45.

Defendants' taking of the Conditional Payment for their own use constitutes an unlawful assumption and exercise of the right of ownership over personal property belonging to Plaintiff, in hostility to Plaintiff's rights.

46.

As a result of Defendants unlawfully converting the Conditional Payment to their own use, Plaintiff is entitled to compensatory damages in an amount not less than $1,185,000.00.

47.

Defendants have acted willfully, maliciously, recklessly, with the intent to harm and injure Plaintiff, and with a conscious indifference to the consequences of their actions. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to punitive damages pursuant to O.C.G.A. § 51-12-5.

48.

Defendants have acted in bad faith, been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense. As a direct and proximate result of Defendants' conduct, pursuant to O.C.G.A. §§ 13-1-11 and 13-6-11, Plaintiff is entitled to an award of attorneys' fees.

**COUNT II**
**BREACH OF CONTRACT**
*(against Meyer)*

49.

Plaintiff incorporates Paragraphs 1 through 48 above as if fully restated herein.

50.

Plaintiff, Thruway Direct, Final Mile, and Meyer entered into the APA, whereby Plaintiff purchased all of the assets and assumed all of the liabilities of Thruway Direct and Final Mile.

51.

Beginning on March 29, 2019, Plaintiff owned and operated Thruway Direct by *inter alia* performing the Thruway Direct Work Order with Amazon.

52.

Meyer agreed to act as an agent of Plaintiff as the 'client account manager' with Amazon.

53.

Meyer breached the APA, described herein *inter alia* by exceeding his authority and taking the Conditional Payment for his own use and enjoyment.

54.

All conditions precedent to bringing this cause of action have been performed, have occurred, or have been waived.

55.

Plaintiff has incurred damages because of Meyer's breach of contract, and Meyer is liable to Plaintiff in an amount equal to the Conditional Payment of $1,185,000.00.

56.

Meyer has acted in bad faith, been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense. As a direct and proximate result of

Meyer's conduct, pursuant to O.C.G.A. §§ 13-1-11 and 13-6-11, Plaintiff is entitled to an award of attorneys' fees.

## COUNT III
## CONSTRUCTIVE TRUST

57.

Plaintiff incorporates Paragraphs 1 through 56 above as if fully restated herein.

58.

As a proximate result of Defendants' wrongful conduct, Plaintiff is deprived of access to the funds Amazon paid in accordance with the Separation Agreement that Plaintiff is legally and equitably entitled to receive.

59.

By reason of Defendants' wrongful conduct in which Defendants intercepted the Conditional Payment owed to Plaintiff, Defendants have no legal or equitable right, claim or interest in or to the Release Payment.

60.

Therefore, Plaintiff is entitled to the imposition of a constructive trust in the amount of the Conditional Payment and/or any and all property acquired by use of the Conditional Payment which may be dissipated and wasted without the immediate intervention by the Court.

WHEREFORE, Plaintiff demands the following relief:

(a) Issuance of Summons and Service of Process upon Defendants;

(b) An award of damages against Defendants, jointly and severally, related to Plaintiff's claim for conversion, in an amount not less than $1,185,000.00;

(c) An award of damages against Meyer related to Plaintiff's claim for breach of contract, in an amount not less than $1,185,000.00;

(d) An award of damages against Defendants, jointly and severally, related to Plaintiff's claim for equitable estoppel;

(e) Issuance of a constructive trust over the Account and/or the property purchased using the Conditional Payment, which may be dissipated and wasted without the immediate intervention by the Court;

(f) An award of attorneys' fees against Defendants, jointly and severally;

(g) An award of punitive damages against Defendants, jointly and severally;

(h) An award of pre-judgment interest at the statutory rate;

(i) An award of post-judgment interest at the statutory rate;

(j) A trial by jury; and

(k) Such other and further relief as this Court deems fair and just.

RESPECTFULLY SUBMITTED, this 4th day of February, 2021.

**SCHULTEN WARD TURNER & WEISS, LLP**

*s/ Kevin L. Ward*
Kevin L. Ward, Georgia Bar No. 737020
Megan E. Naioti, Georgia Bar No. 128253
*Counsel for Plaintiff*

260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Facsimile)
k.ward@swtwlaw.com
m.naioti@swtwlaw.com